**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

| | |
|---|---|
| MICHAEL STEWART, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | )  No. 16-6117-CV-SJ-BP |
| | ) |
| DAVID SPEISER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

<u>**ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT CHRISTOPHER KIMMEL'S MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiffs' Amended Complaint, (Doc. 34), asserts nine claims against law enforcement officers from the Lathrop Police Department, the Clinton County Sheriff's Department, the North Kansas City Police Department, and a security guard at the North Kansas City Hospital, ("the Hospital"). All defendants are purportedly sued in their individual and official capacities. (Doc. 34, ¶¶ 9-10.) The first eight counts are claimed civil rights violations, brought by Plaintiff Michael Stewart ("Michael")[1] pursuant to 42 U.S.C. § 1983. Count IX is a claim for loss of consortium brought by Plaintiff Jennifer Stewart ("Jennifer").

Defendant Christopher Kimmel is an officer with the North Kansas City Police Department. He has filed a Motion for Summary Judgment, contending the undisputed facts demonstrate that he is entitled to judgment as a matter of law. Plaintiffs contend that there are disputed issues of material fact that preclude judgment as a matter of law. As set forth below, Kimmel's Motion for Summary Judgment, (Doc. 69), is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Michael is sometimes referred to by the parties as "Shane."

## I. BACKGROUND

### A. General Observations

At the outset the Court addresses some general matters to explain why they are not discussed in greater detail in this Order. First, some aspects of Plaintiffs' claims refer to incidents that Kimmel was not involved in and that form the basis for Plaintiffs' claims against other Defendants. Each side disputes the other's characterization of these events but the Court should not delve deeply into those disputes because, as stated, Kimmel was not involved in them and they do not form the basis for Plaintiffs' claims against Kimmel. The Court can provide sufficient context for Plaintiffs' claims against Kimmel by discussing those other matters generally, without detail.

Second, in some instances Plaintiffs attempt to dispute facts by discussing unrelated facts that have nothing to do with the proposition originally advanced by Kimmel. The Court finds it unnecessary to discuss these extraneous allegations.[2] Relatedly, there are several occasions in which Plaintiffs attempt to dispute a fact with a contention that is not supported by the portion of the Record cited by Plaintiffs. The Court will not point out all such occasions, and will provide citations to the Record as necessary.

### B. Events Giving Rise to Plaintiffs' Claims Against Kimmel

Michael was arrested outside a convenience store in Lathrop, Missouri, on August 8, 2014; the arresting officer (David Speiser, of the Lathrop Police Department) administered force in the course of arresting Michael. He was then taken to the Clinton County Jail; there, he was involved in another physical altercation. At some point thereafter, Michael was transported to

---

[2] Among the topics the Court will not address in this Order is Plaintiffs' repeated claim that one or more Defendants tampered with a video of Plaintiff's removal from the ambulance at the Hospital. Plaintiffs' claims against Kimmel are not based on Kimmel's actions when Plaintiff was removed from the ambulance and, as will be discussed, Kimmel was not even present. Therefore, the video is irrelevant to the issues addressed in this Order.

the Hospital by ambulance. Two deputies from Clinton County (John Patterson and Jeffrey Parton) and Speiser came to the Hospital as well. An incident occurred when the officers removed Plaintiff from the ambulance, after which Speiser signed a complaint alleging that he was assaulted by Michael. Speiser did not have authority to arrest Michael (because he was not a law enforcement officer for North Kansas City or Clay County), so Gary Ficken – an off-duty North Kansas City police officer who was working as a security officer at the Hospital – directed that Michael be arrested when he was discharged from the Hospital. The arrest was effectuated by Kimmel.

According to Michael, when Kimmel put the handcuffs on "he slapped the handcuff on" and Michael "said 'Ow, could you do that a little bit harder next time?' and he did. He smacked on [sic] the right side." (Doc. 101-1, p. 36 (Michael Stewart Depo., p. 134).) Michael further testified that "[i]f you slap the handcuff from a distance, it hurts . . . and that was done." (Doc. 101-1, p. 36 (Michael Stewart Depo., p. 135).)

At the police station, Michael refused to answer questions asked by Kimmel and told him to talk to his attorney; the two eventually became "verbally aggressive" in their exchange. (Doc. 101-1, p. 38 (Michael Stewart Depo., p. 141).) However, there is no suggestion that Michael was physically aggressive; the evidence viewed in the light most favorably to Plaintiffs suggests that Michael was uncooperative, perhaps belligerent, and refused to answer certain questions. After the booking process was completed, Kimmel told Michael that he was "going into the tank," grabbed him, and began escorting him to a cell. According to Michael, when the pair reached the doorway to the cell, Kimmel stepped back, hit Michael from behind, and knocked him into the wall. (Doc. 101-1, p. 38 (Michael Stewart Depo., p. 143).) Michael described the contact as similar to a football player running into another from behind, and stated the force was

sufficient to knock him off of his feet and into the wall head-first, at which point Michael fell to the ground. (Doc. 101-1, pp. 38-39 (Michael Stewart Depo., pp. 143-45).) Michael then asked for an ambulance to return him to the Hospital, and this was done.

As summarized earlier, Michael was involved in several altercations with law enforcement on August 8 prior to the incident with Kimmel. The Record contains some evidence regarding Michael's injuries, but there is little evidence that would allow a factfinder to attribute a specific injury to a particular incident.[3] Michael testified that his collision with the cell's wall caused a knot on his head. (Doc. 101-1, p. 39 (Michael Stewart Depo., p. 146).) Jennifer testified that at the end of the day Michael "looked disheveled, like he had been in a fight, bruis[ed]," "had a mark on his face and he had a huge bump on his head and he complained of a headache," and his [w]hole body hurt." (Doc. 101-5, p. 40 (Jennifer Stewart Depo., pp. 150-51).)[4] Records from the Hospital on his return visit indicate that Michael complained of a sore throat and swelling on his side and neck from being choked earlier in the day (not by Kimmel), but nothing specifically related to the incident at the North Kansas City Police Department. (Doc. 101-5, p. 4.) He was not treated for head trauma or wrist pain at the Hospital. Michael saw Dr. Braden Dunbar approximately twelve days later; a CT scan was performed but the results were normal. (Doc. 70-6, pp. 1-2.) He returned to Dr. Dunbar in November 2014, complaining of injuries from the events of August 8 (including "being pushed

---

[3] Plaintiffs assert that "[w]hen Kimmel aggressively handcuffed [Michael] he broke [Michael's] wrist." (Doc. 101, p. 19.) They point to "Ex. 9, Meritas 0000167" for support. However, Exhibit 9 is not a medical record; it is a copy of photograph that is so dark that it is impossible to describe what it depicts. (Doc. 101-9.) Records from Meritas are provided as Exhibit 8, but Bates Number 0000167 is not included. (Doc. 101-8.) Plaintiffs identify no other documents for the Court to consider, and the Court has not independently located any other document establishing that Kimmel broke Michael's wrist.

[4] Plaintiffs have supplied pictures, but (1) there is no indication as to when they were taken, (2) there is no indication as to what caused any of the injuries depicted, and (3) the copies filed with the Court are so poor that they do not reveal anything. (Doc. 101-6.)

forcefully unto the jail cell where he struck his head on the wall losing consciousness"); those injuries consisted of frequent severe headaches and pain in his neck and wrist. An MRI was normal. (Doc. 70-6, p. 6.)[5]

Most of Plaintiffs' claims do not involve Kimmel, but the Court will list them because Plaintiffs allege that Kimmel conspired to commit the violations in all of the claims in the Amended Complaint. Count I asserts Michael was subjected to excessive force before he was brought to the Hospital. Count II alleges that Michael's arrest outside the convenience store in Lathrop was not supported by probable cause. Count III asserts that law enforcement officers failed to protect Michael from excessive force. Count VI is a specific attempt to impose liability on Lathrop and Clinton County. Kimmel is not a defendant in any of these claims.

Kimmel is named as a Defendant in Counts IV, VII, and IX.[6] Count IV is a conspiracy claim, which asserts that all or most of the law enforcement officers (including Kimmel) conspired with each other to violate Michael's civil rights as set forth in the Amended Complaint's other claims. Count VII alleges that Kimmel employed excessive force. Count IX is a loss of consortium claim asserted by Jennifer; Kimmel is a defendant on this derivative claim to the extent that he is a defendant in Counts IV and VII.[7]

---

[5] Plaintiffs insist that Michael suffered a concussion, and point to a Neuropsychlogical Evaluation Report from the Rehabilitation Institute of Kansas City prepared in May 2018. (*See* Doc. 101, p. 11 (citing Doc. 101-7).) The Report does not actually contain a formal diagnosis; instead, it reports Michael's representation that "Dr. Kosa . . . told him that he thought he had a concussion" and that he was improving until he experienced a "setback when he was struck in the head by a volleyball while at his daughter's match." (Doc. 101-7, p. 3.) The Report also diagnoses Michael as exhibiting "evidence . . . of Post-concussion Syndrome . . . ." (Doc. 101-7.) However, Plaintiff has not discussed Dr. Kosa, provided his medical records in this proceeding, or identified any evidence establishing that Kimmel caused him to suffer a concussion.

[6] Kimmel was also a defendant in Count VIII, but Count VIII was previously dismissed. (Doc. 47.)

[7] Plaintiffs have also sued Kimmel in his official capacity. A suit against an officer in his official capacity effectively names the municipality for which he works. *E.g., Kentucky v. Graham,* 473 U.S. 159, 165 (1985); *Baker v. Chisom,* 501 F.3d 920, 925 (8th Cir. 2007). While suing Kimmel in his official capacity may be sufficient to *name* the municipality as a defendant, it is not clear that serving Kimmel effectively *served* the municipality; the municipality may still have to be served in the manner required by law. The parties do not raise this issue however,

Kimmel argues that he is entitled to qualified immunity on Counts IV and VII because the uncontroverted facts demonstrate that (1) he did not apply excessive force and that he did not form an agreement with any of the other Defendants to violate Michael's civil rights, and (2) even if he did, a reasonable officer in his position would not have known that he was violating Michael's constitutional rights. He further contends that he cannot be liable to Jennifer under Count IX if he is not liable under either Count IV or Count VII. Plaintiffs oppose summary judgment. In the course of the Court's analysis additional facts will be discussed, but as detailed below Kimmel's Motion for Summary Judgment is **GRANTED IN PART**.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not rest on mere allegations or pleading denials, but must point to evidence in the Record demonstrating the

---

so the Court will not consider the matter further.

existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

### A.  Count VII – Excessive Force[8]

"Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013). The Court has discretion to decide these two steps in either order. *E.g., Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

A claim of excessive force is evaluated under the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 394 (1989), and the reasonableness of the amount of force is judged from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight, giving due regard to an officer's need to make split-second decisions based on evolving circumstances at the scene. *E.g.*, *Graham*, 490 U.S. at 396-97; *Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012). "The determination whether the force used . . . was reasonable ultimately requires a case-specific balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Chambers v. Pennycook,* 641 F.3d 898, 906 (8th Cir. 2011) (quotation omitted). Considering the "governmental interest at stake" plainly requires the Court to consider the proffered justification for the use of force. Factors to consider include whether the person poses a threat to the safety of the officer or others and whether the person is resisting arrest. *E.g., Mack v. Dillon,* 594 F.3d 620, 623 (8th Cir. 2010).

In addition, while not controlling, "[t]he degree of injury is certainly relevant insofar as it tends to show the amount and type of force used." *Chambers,* 641 F.3d at 906. A *de minimis*

---

[8] For the sake of clarity the Court will discuss Count VII before discussing Count IV.

7

use of force is not unconstitutional, but "[t]he degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted." *Id.* "[I]t is logically possible to prove an excessive use of *force* that caused only a minor *injury*, and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question." *Id.*; *see also LaCross v. City of Duluth,* 713 F.3d 1155, 1158 (8th Cir. 2013); Finally, the Court must keep in mind that

> [p]olice officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, *Graham,* 490 U.S. at 396, 109 S.Ct. 1865, and reasonable applications of force may well cause pain or minor injuries with some frequency. It remains firmly established that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citation and quotation omitted). The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied.

*Chambers,* 641 F.3d at 907.

If the facts permit a jury to conclude that the plaintiff's constitutional rights were violated, the officer may still be entitled to judgment based on qualified immunity. "To overcome qualified immunity, a plaintiff must be able to prove that every reasonable official would have understood that what he is doing violates a constitutional right, and that the constitutional question was beyond debate." *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015) (quotations omitted). There is no need for a case to be directly on point, but the established law must not be analyzed at a high level of generality. *E.g., Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014).

### *1. The Handcuffs*

Based on the standards set forth above, the Court concludes that the Record construed in the light most favorable to Plaintiff establishes nothing more than *de minimis* force in connection

with the handcuffs. "Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied. To prove that the force applied was excessive in that context, therefore, a plaintiff must demonstrate something more." *Chambers,* 641 F.3d at 907 (quotation and citations omitted). A plaintiff who "produce[s] no evidence that he suffered anything beyond minor injuries due to the handcuffing . . . cannot demonstrate a Fourth Amendment violation." *Stepnes v. Ritschel,* 663 F.3d 952, 961 (8th Cir. 2011). Here, the Record demonstrates that Michael suffered no injury and that minimal force was involved. Therefore, this incident cannot support the excessive force claim asserted in Count VII.

### *2. The Incident at the North Kansas City Police Station*

Kimmel argues that he is entitled to summary judgment on Plaintiffs' claim of excessive force at the North Kansas City police station because (1) the force employed was *de minimis* and (2) the use of force was justified. The Record, construed in Plaintiffs' favor, does not support Kimmel's arguments.

First, with respect to the degree of force, Kimmel contends that he used *de minimis* force because Michael suffered no injuries. However, the Record does not conclusively establish that Michael did not suffer any injuries. More importantly, as noted earlier the relevant inquiry examines the amount of force employed, not the degree of injuries caused. Even if the Record established a lack of severe injuries, this fact would not establish that Kimmel administered *de minimis* force. Here, construing Michael's testimony in the light most favorable to him, Kimmel was escorting Michael to the cell when he stepped back and rammed his shoulder into Michael's back. Kimmel administered sufficient force to knock Michael off of his feet and into a wall head-first, thereby causing (at a minimum, because a jury could find more severe injuries) a knot

9

on Michael's head and continuing headaches. A reasonable jury could find that Kimmel utilized more than *de minimis* force.

Second, with respect to the justification for the use of force, Kimmel relies on cases that are readily distinguishable. For instance, he relies on *Hollingsworth v. City of St. Ann,* 800 F.3d 985 (8th Cir. 2015) to contend that "[w]here an arrestee is uncooperative and obstructs the booking process it is not unreasonable for officers to use some force to accomplish their duty." (Doc. 70, p. 7.) However, in *Hollingsworth,* the plaintiff "repeatedly refused to change from her street clothes into an orange jumpsuit when she was booked into the jail" and "[t]he officers had a legitimate safety reason for requiring the change of clothes." 800 F.3d at 990. Thus, a reasonable degree of force was justified to make the plaintiff change clothes and accomplish the legitimate safety objectives; as the Eighth Circuit explained, the situation was different from cases "where there was no justification for the use of *any* force." *Id.* In a Tenth Circuit case Kimmel relies on, the Court of Appeals held that a certain amount of force was justified to control and handcuff a *physically* combative detainee, and a video of the incident demonstrated that the plaintiff accidentally tripped over his leg irons. *Tapia v. City of Albuquerque,* 101 Fed. App'x 795, 797-98 (10th Cir. 2004). However, there is no evidence that Michael was combative or physically resisting Kimmel, and the evidence construed in Michael's favor contradicts any suggestion that Michael accidentally fell into the wall. Finally, Kimmel points to *Crumley v. City of St. Paul, MN,* 324 F.3d 1003 (8th Cir. 2003), which considered the use of force necessary to effectuate an arrest. The case is inapplicable here because Michael was already under arrest (and, in fact, was in handcuffs).

Kimmel also does not point to any evidence justifying his use of force on Michael. He contends that Michael was belligerent and uncooperative during booking, but the Record

10

contains evidence demonstrating that this amounted simply to Michael's unwillingness to answer questions during the booking process – and the booking process was already completed when the use of force occurred. The Court does not believe that Kimmel intends to suggest that he could use force to either (1) make Michael answer questions or (2) punish him for refusing to do so,[9] but if he does the law is clearly to the contrary. Similarly, Kimmel's claim that "Ficken . . . observed [Michael] being combative" at the Hospital, (Doc. 70, p. 8), is irrelevant, because Kimmel's use of force occurred much later and was not intended to protect anyone or to control Michael at the Hospital.

It has long been established that the use of more than *de minimis* force can be justified, depending on the circumstances. However, there must be a justification for the use of that force – and here, Kimmel suggests none. A reasonable officer in Kimmel's position would have known that the Constitution required *some* justification for the use of greater than *de minimis* force. And, there is evidence in the Record that would permit the jury to find that Kimmel violated Michael's clearly-established right to not be subjected to excessive force when he shoulder-blocked Michael into the wall. Therefore, Kimmel is denied summary judgment on this aspect of Count VII.

### B. Count IV – Conspiracy to Violate Constitutional Rights

Count IV asserts that Kimmel was part of a conspiracy to violate Michael's constitutional rights. It alleges that all Defendants "formed a plan and/or had a meeting of the minds on August 8, 2014, at the Fast Break Store [i]n Lathrop, MO; or at the Clinton County Sheriff's Department; or at the North Kansas City Hospital" to violate Michael's rights and "specifically

---

[9] Plaintiffs argue that Kimmel exerted force in retaliation for Michael's exercise of his Fifth and Sixth Amendment rights, (Doc. 101, pp. 21-22), which may simply be Plaintiffs' theory as to why Kimmel utilized force. However, the manner in which the argument is presented causes the Court to observe that the Amended Complaint does not contain a separate claim of retaliation, or any claim asserting a violation of Michael's Fifth or Sixth Amendment rights.

to seize the Plaintiff physically and through the use of cruel and inhuman use of force having unlawfully assaulted where Plaintiff was [sic]." (Doc. 34, ¶ 65.) Four overt acts are alleged: one involves removing Plaintiff from his car at the convenience store without probable cause, two involve the application of force, and the fourth alleges that Defendants took Michael "into custody without probable cause to suspect the commission of any unlawful act." (Doc. 34, ¶ 66.)

> To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir.1999). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.*

*White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008). The first element requires proof that there was a meeting of the minds among the alleged conspirators, *Murray v. Lene,* 595 F.3d 868, 870 (8th Cir. 2010) (citing cases), and this element cannot be established with mere speculation. *E.g., Johnson v. City of Shorewood, MN,* 360 F.3d 810, 817 (8th Cir. 2004); *Mahaney v. Warren County,* 206 F.3d 770, 771-72 (8th Cir. 2000).

The Court's description of the facts, alone, is sufficient to demonstrate that Kimmel is entitled to summary judgment on this claim. Kimmel was not present when Michael was arrested at the convenience store in Lathrop, taken to the Clinton County Sheriff's Office, or removed from the ambulance. And, Plaintiffs identify no evidence explaining how Kimmel could have conspired with anyone to engage in those events. Plaintiffs contend that "all of the officers, including Kimmel, were in a position to view the events" when Michael was removed from the ambulance. (Doc. 101, p. 25.) For support, they cite their response to Defendants' Statement of Uncontroverted Fact 11 and Exhibit 11, but neither refers to Kimmel. Plaintiffs' response to Fact 11 discusses whether Plaintiff kicked at a nurse after being removed from the

ambulance and does not mention Kimmel at all. (Doc. 101, p. 6.) Exhibit 11 is a single frame from the video of the events at the Hospital, but it is almost completely black and nothing can be discerned. (Doc. 101-11, p. 2.)[10] Plaintiffs also insist that the Record provides evidentiary support for the conspiracy because Kimmel is a joint-tortfeasor with the other law enforcement officers and all of them combined to cause a single indivisible injury. (Doc. 101, p. 20.) However, this characterization – even if supported by the Record – would not establish a meeting of the minds necessary to support a conspiracy claim.

Plaintiffs also insist that Count IV survives summary judgment because the Record supports their claim that Kimmel conspired with Ficken to arrest Michael. (Doc. 101, pp. 22-23.) However, the Amended Complaint does not allege that this arrest violated the Fourth Amendment; the only arrest alleged to violate the Constitution is the one described in Count II, which relates to Michael's arrest in Lathrop. The arrest by Kimmel is mentioned, but all that is alleged is that the arrest occurred. (Doc. 34, ¶ 8.) The Amended Complaint does not allege that the arrest by Kimmel was unconstitutional, nor does it set forth any facts that would support such a claim. Therefore, Count IV cannot be interpreted as alleging that Kimmel conspired with anyone to have Michael arrested in violation of the Fourth Amendment.

Regardless, Kimmel would be entitled to summary judgment even if the Amended Complaint alleged this theory. Ficken acted on Speiser's signed complaint that Michael assaulted him, which provided Ficken and Kimmel with probable to arrest Michael. *See, e.g., Kuehl v. Burtis,* 173 F.3d 646, 650 (8th Cir. 1999) ("an officer may make an arrest if a credible eyewitness claims to have seen the suspect commit the crime"); *Peterson v. City of Plymouth,* 60

---

[10] The Court has reviewed the entire video and Kimmel does not appear. Even if the video was tampered with, it could not have been tampered with in a manner that completely removed Kimmel.

F.3d 469, 474-75 (8th Cir. 1995) ("officers are generally entitled to rely on the veracity of information supplied by the victim of a crime . . . .").

The evidence in the Record demonstrates that Kimmel did not form an agreement with anyone to violate Michael's constitutional rights and Plaintiffs identify no evidence that creates a factual dispute on this matter. Accordingly, Kimmel is entitled to summary judgment on Count IV.

### C. Count IX – Loss of Consortium

Kimmel's liability to Jennifer on Count IX depends on his liability to Michael under Counts IV or V. Kimmel is granted summary judgment on Count IX to the extent that he is granted summary judgment on Counts IV and VII.

### III. CONCLUSION

For the reasons set forth above, Kimmel's Motion for Summary Judgment, (Doc. 69), is **GRANTED IN PART**, and Kimmel is granted summary judgment on Plaintiffs' claim that Kimmel violated Michael's constitutional rights when he applied the handcuffs and that Kimmel conspired with others to violate Michael's constitutional rights. Summary judgment is denied on Plaintiffs' claim that Kimmel utilized excessive force when he was putting Michael into a cell.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: January 29, 2018            UNITED STATES DISTRICT COURT