IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| MICHAEL STEWART, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 16-6117-CV-SJ-BP |
| ) | |
| DAVID SPEISER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' Amended Complaint, (Doc. 34), asserts nine claims against law enforcement officers from the Lathrop Police Department, the Clinton County Sheriff's Department, the North Kansas City Police Department, and a security guard at the North Kansas City Hospital, ("the Hospital"). All defendants are sued in their individual and official capacities. (Doc. 34, ¶¶ 9-10.) The first eight counts are claimed civil rights violations, brought by Plaintiff Michael Stewart ("Michael")[1] pursuant to 42 U.S.C. § 1983. Count IX is a claim for loss of consortium brought by Plaintiff Jennifer Stewart ("Jennifer").

Pending is a Motion for Partial Summary Judgment filed by the Lathrop and Clinton County Defendants. The Lathrop Defendants are Chief John Wilson and Officer David Speiser of the Lathrop Police Department,[2] and the Clinton County Defendants are Sheriff Porter

---

[1] Michael is sometimes referred to by the parties as "Shane."

[2] Speiser was both a police officer for the City of Lathrop and a Deputy for Clinton County. In this occasion he was acting in his capacity as an officer for Lathrop. Plaintiffs attempt to dispute this fact by relying on "Ex.15," (Doc. 103, p. 4), but they have supplied only 7 exhibits. They may be referring to Exhibit 2, the first page of which is a handwritten note stating "MSS Exhibit #15," (Doc. 103-2), but nothing in this exhibit demonstrates that Speiser was not acting as a Lathrop police officer when he arrested Michael. Plaintiffs also repeatedly point out that Speiser sent a report to the Clinton County Prosecutor. Even if this is true, it does not establish that Speiser was acting as a deputy for Clinton County and not an officer for the City of Lathrop. Lathrop is in Clinton County, and it is not surprising that Speiser would at some point provide a report to the prosecuting attorney for the county – particularly given that Michael was originally charged with two felonies.

Henson, Major Nicholas Neill,[3] and Deputies Jeff Parton and John Patterson of the Clinton County Sheriff's Office. All Defendants are named in their individual and official capacities (which means that Lathrop and Clinton County are also Defendants, *e.g., Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007)), and these Defendants are named in Counts I through VI and Count IX. They seek summary judgment on some, but not all of the claims asserted against them. Plaintiffs contend that there are disputed issues of material fact that preclude judgment as a matter of law. As set forth below, the Motion for Partial Summary Judgment, (Doc. 87), is **GRANTED**.

## I. BACKGROUND

The Court begins by addressing some general matters. First, in many instances Plaintiffs respond to Defendants' proffered statements of uncontroverted facts by discussing unrelated facts that have nothing to do with the proposition originally advanced by Defendants and that have no bearing on the legal issues to be decided. The Court finds it unnecessary to discuss these extraneous allegations. Relatedly, there are several occasions in which Plaintiffs attempt to dispute a fact with a contention that is not supported by the portion of the Record cited by Plaintiffs. In some instances, Plaintiffs cite to exhibits that they have not supplied to the Court. Where necessary, the Court has supplied citations to the Record for the facts recited in this Order. In other instances, Plaintiffs attempt to controvert facts by contending that they lack sufficient information to admit or deny the facts in question. This is not an appropriate response to a motion for summary judgment; the non-moving party must point to evidence in the Record that creates a factual dispute. *E.g.,* Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010). In these instances, the matters are effectively admitted.

---

[3] Neill's name is spelled "Neal" in the Amended Complaint, but the Court has utilized the spelling Neill used in his declaration. (Doc. 88-7.)

### A. The Events of August 8, 2014 Relevant to This Motion

On the evening of August 8, 2014, Michael was arrested outside a convenience store in Lathrop, Missouri by Speiser, and was initially charged with two felonies and a misdemeanor. One felony charge was dismissed and the other was reduced to a misdemeanor. He was eventually convicted of assaulting a law enforcement officer and driving while intoxicated (a Class A misdemeanor and a Class B misdemeanor, respectively), and the convictions were affirmed by the Missouri Court of Appeals.

Speiser administered force in order to remove Michael from his car, and at some point Michael lost consciousness; there is no need to detail these facts because Speiser does not seek summary judgment on Plaintiffs' claims related to this use of force. Parton and Patterson arrived on the scene after Michael had already been removed from his car; they obviously did not see anything that occurred before they arrived, and they also did not see Speiser administer any force after they arrived. (Doc. 88-5, ¶¶ 3-6; Doc. 88-6, ¶¶ 3-6.) Michael regained consciousness while Speiser was transporting him to the Clinton County Jail, and he remained conscious for the duration of the trip. Plaintiffs allege that Speiser administered excessive force in removing Michael from the police car at the Clinton County Jail; again, these facts need not be detailed because Speiser does not seek summary judgment on this claim. Importantly, Plaintiffs concede that none of the other Defendants was present at the time of this incident. (Doc. 103, p. 7 (Plaintiffs' response to Defendants' Statement of Uncontroverted Fact # 18).)[4]

Michael again lost consciousness, and when he regained consciousness he found himself on the floor in a holding cell. He asked that an ambulance be summoned, and one was called for him. While the ambulance was en route, Michael was placed on a bench outside of his cell. He

---

[4] All page numbers are those generated by the Court's CM/ECF system.

was then transported by ambulance to the Hospital. Neill was present at the jail for at least part of the time Michael was there. However, he never touched Michael, and he never saw anyone use inappropriate or excessive force on Michael. (Doc. 88-7, ¶ 5.) Patterson and Parton were also present at the jail for part of the time that Michael was there; Plaintiffs admit that Patterson and Parton did not use force on Michael, and the Record establishes that Patterson and Parton also did not see anyone subject Michael to excessive or inappropriate force. (Doc. 88-5, ¶¶ 7-8; Doc. 88-6, ¶¶ 7-8.)[5] Henson was not present at the jail when Michael was there. Similarly, Wilson had no dealings with Michael on August 8.

Speiser, Patterson, and Parton went with the ambulance to the Hospital. Plaintiffs allege that Michael was subjected to excessive force when he was removed from the ambulance; Speiser, Patterson, and Parton do not seek summary judgment on this claim, so the Court need not discuss the surrounding facts. Later, acting on a complaint signed by Speiser alleging that he was assaulted by Michael at the Hospital, Officer Christopher Kimmel of the North Kansas City Police Department arrested Michael. There are additional facts surrounding Plaintiffs' claims, but they involve Plaintiffs' claims against other Defendants and need not be discussed in this Order.

### C. Additional Facts about Policies, Practices and Customs

Prior to Plaintiffs' complaint in this case, Chief Wilson had received no allegations of excessive force involving members of the Lathrop Police Department. The police department's policy was for all officers to use no more force than necessary to effect an arrest. All officers

---

[5] Plaintiffs attempt to controvert these facts about what Neill, Patterson and Parton witnessed by pointing out that "Deputy Bink" (sometimes referred to as "Officer Bink") saw Speiser use force when Michael was brought to the jail. (Doc. 103, pp. 9-10.) The fact that Bink saw an event does not establish that anyone else saw it (or was even there). Moreover, Plaintiffs conceded that Bink was the only person to witness Speiser's use of force upon his arrival at the jail. (Doc. 103, p. 7 (Plaintiffs' response to Defendants' Statement of Uncontroverted Fact # 18).) Bink is not a defendant in this case.

(including Speiser) were required to complete POST training through the State of Missouri[6] and also received on-the-job training.

Similarly, Clinton County – through Sheriff Henson – has a written policy regarding the use of force, which requires deputies and other Sheriff's Office employees to use the minimum amount of force necessary to effectuate arrests, overcome resistance, prevent escapes, or otherwise accomplish the lawful performance of duty. Use of Force reports are required whenever force is utilized, and those who utilize excessive force are subject to discipline. Use of Force reports are reviewed by supervisors, and the reviewing supervisor(s) are responsible for bringing incidents of excessive force to Henson's attention. There have been occasions in which Henson has disciplined deputies for using excessive force. (Doc. 88-8.) Clinton County also has a policy requiring law enforcement personnel to protect members of the public from harm, and officers are expected to intervene to prevent the use of excessive force. Finally, Neill, Parton and Patterson all underwent POST training and received on-the-job training.

Plaintiffs attempt to create factual disputes on some of these points, but their efforts are unavailing. They stress that excessive force was used in this case, but even if this is true it does not alter the fact that (1) these policies exist and (2) deputies have been disciplined for administering excessive force. Plaintiffs also contend that other individuals have been subjected to excessive force and identify Kerrie Mick, Troy Thompson, and Steven Turner.[7] However, the material they cite for Mick is Exhibit 20, and there is no Exhibit 20 – nor is there any other exhibit that appears to be related to Mick. Exhibits 6 and 7 are affidavits from Turner and Thompson. Turner's affidavit primarily discusses the Daviess/DeKalb County Regional Jail.

---

[6] "POST" is an acronym for Peace Officers Standards and Training, and is a program created by state law. *See, e.g.,* Mo. Rev. Stat. §§ 590.010(4), 590.030 - .050.)

[7] Plaintiffs say that there were "four other individuals," but identify only three. (Doc. 103, p. 17.)

5

(Doc. 103-6.) Thompson's affidavit discusses both the Clinton Jail and the Daviess/DeKalb County Regional Jail. It also, as Defendants point out, relies on hearsay to describe other incidents at the Clinton County Jail, and hearsay cannot be used to create a factual dispute. *E.g., Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008). Neither affidavit says anything about the Lathrop Police Department, and the competent evidence in the affidavits does not establish that any force used at the Clinton County Jail was excessive or otherwise unconstitutional.

### D. Plaintiffs' Amended Complaint

The following counts have been asserted against the moving Defendants.

- Count I alleges that Patterson, Parton, and Speiser violated Michael's constitutional rights by using excessive force (1) when Michael was arrested outside the convenience store and (2) when he was first brought to the Clinton County Jail.

- Count II alleges that Patterson, Parton, and Speiser violated Michael's constitutional rights by arresting him outside the convenience store without probable cause.

- Count III alleges that Patterson, Parton, Wilson, Hanson, Neill, and Speiser all violated their constitutional obligations to protect Michael from the use of excessive force alleged in Counts I and V.

- Count IV alleges that all of the Defendants conspired with each other to violate Michael's constitutional rights.

- Count V alleges that Patterson, Parton, and Speiser administered excessive force at the Hospital.

- Count VI contains only "official capacity" claims and thus is construed as asserting claims against the City of Lathrop and Clinton County.[8]

---

[8] The official capacity claims asserted against the individual defendants only duplicate the claims asserted in Count

- Count IX is Jennifer's loss of consortium claim.

Defendants seek only partial summary judgment. Wilson, Hanson, and Neill seek summary judgment on all claims asserted against them in their individual capacity. Summary judgment is also sought on all claims asserted against the City of Lathrop and Clinton County (including Count IV). However, (1) only Patterson and Parton seek summary judgment on Count I, (2) Speiser's, Patterson's, and Parton's request for summary judgment on Count III is limited to events at the convenience store and the Clinton County Jail, and (3) none of the Defendants seek summary judgment on Count V. Finally, they do not seek summary judgment on Count IX to the extent that it depends on the claims for which summary judgment is not sought. In all other respects, Defendants contend the uncontroverted facts demonstrate that they are entitled to judgment as a matter of law on the merits. The individual Defendants alternatively contend that they are entitled to qualified immunity. Plaintiffs oppose summary judgment. The Court agrees that the Record demonstrates Defendants are entitled to judgment on the merits (making it unnecessary to consider the issue of qualified immunity), so Defendants' Motion for Partial Summary Judgment is **GRANTED**.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might

---

VI, so Lathrop's and Clinton County's liability will be discussed only once when Count VI is addressed.

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not rest on mere allegations or pleading denials, but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

At the outset, the Court addresses a recurring argument of Plaintiffs'. They repeatedly contend that Defendants destroyed portions of a video of the events at the Hospital. (*E.g.,* Doc. 103, pp. 23-27, 30-31, 36-37.) The events at the Hospital (and the video) are relevant only to Count V and those portions of Count III related to the Hospital – that is, to claims for which Defendants do not seek summary judgment. For these reasons, there is no need for the Court to discuss the video in this Order.

### A.  Count I – Excessive Force

Count I alleges that Patterson, Parton, and Speiser violated Michael's constitutional rights by using excessive force (1) at the time of Michael's arrest outside the convenience store and (2) when Michael was first brought to the Clinton County Jail. Speiser does not seek summary judgment on this claim. Patterson and Parton seek summary judgment because the uncontroverted facts establish that they did not administer force on Michael on either occasion. A detailed discussion of the law is unnecessary for two reasons. First, Defendants' description

of the Record is accurate: the uncontroverted facts demonstrate that Patterson and Parton never administered any force on Michael when he was arrested or at the Clinton County Jail. Obviously, if no force was administered, a claim of excessive force will fail. Second, Plaintiffs do not respond to Patterson's and Parton's argument, thereby waiving any argument they might have. *E.g., Ames v. Nationwide Mut. Ins. Co.,* 760 F.3d 763, 770-71 (8th Cir. 2014). Despite acknowledging that Speiser does not seek summary judgment on Count I, (Doc. 103, p. 1), Plaintiffs' arguments against summary judgment on Count I focuses exclusively on Speiser's actions. (Doc. 103, pp. 27-29.) Plaintiffs provide no basis for denying summary judgment to Parton and Patterson, and the uncontroverted facts in the Record demonstrate they are entitled to judgment as a matter of law. Accordingly, the Court grants summary judgment to Patterson and Parton on Count I.

### B. Count II – Arrest Without Probable Cause

Count II alleges that Patterson, Parton, and Speiser violated Michael's constitutional rights by arresting him outside the convenience store without probable cause. In their motion, Defendants contend that they are entitled to summary judgment because Michael was convicted of one offense (and the lesser included of another) for which he was arrested. Michael agrees and "withdraws his complaints about that arrest." (Doc. 103, p. 29.) Plaintiffs nonetheless contend that summary judgment on Count II should be denied because Kimmel lacked probable cause to arrest Michael at the Hospital. (Doc. 103, pp. 29-33.) However, this is a new theory; as pleaded, Count II's unlawful arrest claim is limited to the arrest outside the convenience store in Lathrop. This is confirmed by the fact that (1) the Amended Complaint contains no factual allegations explaining why the arrest at the Hospital was unlawful and (2) the only defendants on Count II are Speiser, Patterson, and Parton. Thus, Plaintiffs seek to prevent summary judgment

9

on Count II by effectively amending it to assert a claim about a completely different incident. The Court will not permit Plaintiffs to raise a new claim at this point in the proceedings. Therefore, Defendants are granted summary judgment on Count II.

### C.  Count III – Failure to Protect

Count III alleges that Patterson, Parton, Wilson, Hanson, Neill, and Speiser all violated their constitutional obligations to protect Michael from the use of excessive force (1) outside the convenience store, (2) at the Clinton County Jail, and (3) when Michael was removed from the ambulance at the Hospital.  Patterson, Parton, and Speiser do not seek summary judgment on Count III insofar as it relates to their actions when Michael was removed from the ambulance. (Doc. 107, p. 6.)  Defendants seek summary judgment on all other respects of Count III, and Plaintiffs provide no argument in opposition.  (Doc. 103, pp. 33-34.)  Therefore, the Court's discussion will be brief.

First, Defendants point out that Count III includes allegations about their duty to provide medical care and assistance, (Doc. 34, ¶ 56), but no facts are alleged that might suggest that they violated this duty.  To guard against the possibility that Count III might be construed as also asserting that they did not provide Michael with medical assistance, they seek summary judgment on this theory.  Plaintiffs concede that Michael was provided medical care when requested, (*e.g.,* Doc. 103, p. 20), and do not contend that they have brought a claim asserting a denial of medical treatment.  Therefore, to the extent that Count III might assert a claim that Defendants failed to provide medical care for Michael's serious medical needs, summary judgment is granted to Defendants.

Second, Wilson, Hanson, and Neill seek summary judgment because they were never present at any time when force was administered on Michael.  An officer can be liable for failing

to prevent the use of excessive force if he (1) observed or had reason to know that the excessive force would be used or was being used by another officer and (2) had an opportunity and means to prevent the excessive force. *E.g., Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir. 2009). The uncontroverted facts demonstrate that Wilson, Hanson and Neill were not present when (1) Michael was arrested outside the convenience store, (2) Speiser removed Michael from the police car at the Clinton County Jail, or (3) at the Hospital, so they could not have been aware of – much less prevented – any force that was utilized on these occasions. Moreover, Plaintiffs do not provide any reason why summary judgment should not be granted to these Defendants. Therefore, summary judgment is granted to Wilson, Hanson, and Neill.

Finally, Speiser, Patterson and Parton argue that, except at the Hospital, they were not present when others used force. Only Speiser administered force when Michael was arrested and when he was removed from the police car at the jail; therefore, Speiser cannot be liable for failing to prevent *another officer's* use of excessive force. Patterson and Parton were not present when Speiser used force on these occasions, so even if Speiser utilized excessive force they cannot be liable for failing to intervene. Therefore, Speiser, Patterson, and Parton are entitled to summary judgment on Count III to the extent that it asserts a claim of failure to intervene to prevent excessive force (1) when Michael was arrested or (2) when Michael was removed from the police car at the Clinton County Jail.

Plaintiffs' only arguments opposing summary judgment on Count III relate to the events at the Hospital. (Doc. 103, pp. 33-34.) As stated earlier, Speiser, Patterson and Parton do not seek summary judgment on this aspect of Count III. Therefore, summary judgment is granted on Count III except to the extent that it asserts that Speiser, Patterson, and Parton failed to intervene to protect Michael from excessive force when he was exiting the ambulance at the Hospital.

### D. Count IV – Conspiracy to Violate Constitutional Rights

Count IV asserts that all Defendants were part of a conspiracy to violate Michael's constitutional rights. It alleges that all Defendants "formed a plan and/or had a meeting of the minds on August 8, 2014, at the Fast Break Store [i]n Lathrop, MO; or at the Clinton County Sheriff's Department; or at the North Kansas City Hospital" to violate Michael's rights and "specifically to seize the Plaintiff physically and through the use of cruel and inhuman use of force having unlawfully assaulted where Plaintiff was [sic]." (Doc. 34, ¶ 65.)[9] Four overt acts are alleged: one involves removing Plaintiff from his car without probable cause, two involve the application of force, and the fourth repeats the first by alleging that Defendants took Michael "into custody without probable cause to suspect the commission of any unlawful act." (Doc. 34, ¶ 66.)

> To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir.1999). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.*

*White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008). The first element requires proof that there was a meeting of the minds among the alleged conspirators, *Murray v. Lene,* 595 F.3d 868, 870 (8th Cir. 2010) (citing cases), and this element cannot be established with mere speculation. *E.g., Johnson v. City of Shorewood, MN,* 360 F.3d 810, 817 (8th Cir. 2004); *Mahaney v. Warren County,* 206 F.3d 770, 771-72 (8th Cir. 2000).

---

[9] Count IV also briefly mentions Michael's rights under the Missouri Constitution, (Doc. 34, ¶ 64), but Count IV is clearly based on § 1983 and therefore must be based on violations of federal law. Moreover, state law would not permit Michael to assert a claim for violations of his state constitutional rights. *See, e.g., Collins-Camden P'ship v. County of Jefferson,* 425 S.W.3d 210, 214 (Mo. Ct. App. 2014). Therefore, the Missouri Constitution plays no role in this matter.

The rulings made earlier in this Order limit the potential scope of Count IV. For instance, the Court's determination that Defendants are entitled to summary judgment on Count II means that summary judgment is proper on Count IV to the extent that it asserts the Defendants conspired to arrest Michael without probable cause. Thus, in light of the Court's rulings on Counts I – III, the only aspect of Count IV that remains at this point is the claim that Speiser, Parton, and Patterson agreed to administer excessive force when Michael was removed from the ambulance at the Hospital.

On this point, Defendants contend summary judgment is appropriate because the facts demonstrate there was no such agreement. They rely upon their own affidavits, in which they state under oath that there was no agreement. In their opposition, Plaintiffs identify no evidence establishing the existence of an agreement; they only insist that excessive force was utilized, but do not identify any evidence that would allow a jury to find that Defendants formed an agreement. (Doc. 103, pp. 20-21 (Plaintiffs' response to Defendants' Statement of Uncontroverted Fact # 60).) In their legal argument, Plaintiffs do not present any legal arguments supporting the viability of their conspiracy claim. Instead, they contend that summary judgment should be denied on Count V because Defendants aided and abetted each other. (Doc. 103, pp. 35-38.) The Court rejects Plaintiffs' argument. Count IV asserts a claim for conspiracy to violate constitutional rights, and Plaintiffs present no arguments (legal or factual) that would support a conspiracy claim. Count IV does not assert a claim of "aiding and abetting violations of civil rights," and as with Plaintiffs' attempt to reformulate Count II, the Court will not permit Plaintiffs to effectively amend Count IV to assert a new and different theory.

The evidence in the Record demonstrates that Defendants did not form an agreement with anyone to violate Michael's constitutional rights. Plaintiffs identify no evidence that creates a

factual dispute on this matter, and present no legal argument that would justify denying summary judgment. Accordingly, Defendants are entitled to summary judgment on Count IV.

### E.  Count VI – Unconstitutional Policy, Procedure, or Practice

The official capacity claims asserted throughout the Amended Complaint, and Count VI specifically, seeks to impose liability on the City of Lathrop and Clinton County for the claims asserted in the other counts. For municipal liability to attach there must first be a violation of the plaintiff's constitutional rights. *E.g., McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). But, even if a person's rights are violated, the municipality's liability would not be established by that fact alone. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence., MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (quotations and citations omitted). Plaintiffs do not contend that Lathrop or Clinton County have an official policy that is unconstitutional, so the Court's analysis will focus on (1) custom and (2) training.

#### *1. Custom*

To establish a custom, Plaintiffs must demonstrate:

1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013); *see also Jane Doe A v. Special Sch. Dist. of St. Louis County,* 910 F.2d 642, 646 (8th Cir. 1990). The uncontroverted

facts demonstrate that Lathrop received no complaints of excessive force by its officers before this case, and there is no evidence of any other incidents. Thus, the Record would not permit a jury to find a widespread pattern of unconstitutional conduct, much less that Lathrop's policymakers were aware of and indifferent to any such pattern of misconduct. Similarly, the uncontroverted facts demonstrate that Clinton County responds to confirmed instances of excessive force by disciplining the offending deputies, so a jury could not find Clinton County's policymakers were deliberately indifferent.

Plaintiffs' only response on this issue is to represent that they "can and will establish a long standing practice in Clinton County [J]ail of violating the rights of detainees" and inviting the Court to consider Thompson's and Turner's affidavits. (Doc. 103, p. 38.) Plaintiffs make no arguments regarding Lathrop, and their response is insufficient with respect to Clinton County. Plaintiffs cannot respond to a summary judgment motion with unsubstantiated promises of what they can prove at trial; they must respond by identifying evidence in the Record that will create a factual dispute that requires resolution by a jury. Here, Plaintiffs identify no evidence that would create a factual dispute and permit a jury to conclude that Clinton County is deliberately indifferent to instances of excessive force by its deputies. Moreover, Thompson's and Turner's affidavits do not establish a widespread pattern of excessive force by Clinton County's deputies. The Court generally addressed these affidavits earlier in Part I.C of this Order; to reiterate, these affidavits do not describe widespread incidents, they contain insufficient information to determine whether the force attributed to Clinton County deputies was excessive, and neither affidavit relates to Lathrop. The Court thus concludes that Plaintiffs have not demonstrated a factual dispute that would permit a jury to find that law enforcement personnel in either Lathrop

or Clinton County have a custom of administering excessive force or that Lathrop or Clinton County are deliberately indifferent to such incidents.

## *2. Training*

A plaintiff seeking to impose municipal liability for inadequate training must demonstrate that (1) the training practices are inadequate, (2) the municipality was deliberately indifferent, and (3) the deficiency in training caused the plaintiff's injury. *E.g., Andrews v. Fowler,* 98 F.3d 1069, 1076 (8th Cir. 1996). As a prerequisite to establishing deliberate indifference, there must be some proof that the governmental entity knew the training procedures were inadequate and likely to result in a constitutional violation. *Livers v. Schenck,* 700 F.3d 340, 355-56 (8th Cir. 2012). And, to establish causation, the plaintiff must identify a specific deficiency in any training that actually occurred so that a the factfinder can determine whether "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect[.]" *City of Canton v. Harris,* 489 U.S. 378, 391 (1989). Finally, "several cases in this circuit have held that attendance at a training academy and on-the-job training is sufficient for proper training." *Tucker v. Evans,* 276 F.3d 999, 1003 (8th Cir. 2002).

The uncontroverted facts demonstrate that Clinton County's deputies and Lathrop's officers are POST certified and receive on-the-job training. Plaintiffs do not identify any inadequacies in the training, nor do they identify any evidence establishing that Clinton County or Lathrop knew of any inadequacies in the training. Plaintiffs' response to this issue consists of a single sentence: "Plaintiff[s] can . . . establish that the Jail failed to train deputies in the proper use of force." (Doc. 103, p. 38.) As with their claims regarding custom, Plaintiffs must identify the evidence that will establish this fact now, in response to Defendants' Motion for Partial Summary Judgment. Their promise to present the proof at trial will not prevent summary

judgment when the moving party has identified facts demonstrating that the law enforcement personnel receive POST training and on-the-job training, which has been deemed by the Eighth Circuit to constitute adequate training – particularly in light of Plaintiffs' failure to fulfill their obligation of identifying an inadequacy in that training. Therefore, Plaintiffs cannot impose liability on Lathrop or Clinton County based on a theory that they inadequately trained their officers.

### F.  Count IX – Loss of Consortium

Defendants' liability to Jennifer on Count IX depends on their liability to Michael. Therefore, Defendants are granted summary judgment on Count IX to the extent that they have been granted summary judgment on the other claims asserted against them.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment, (Doc. 87), is **GRANTED.**  Summary Judgment is granted to Patterson, Parton, Speiser, Neill, Wilson, and Hensen (and the City of Lathrop and Clinton County) on all official capacity claims and specifically on Count VI.  With respect to the personal capacity claims,

1. Summary Judgment is granted to Patterson and Parton on Count I.
2. Summary Judgment is granted to all Defendants named in Count II.
3. Summary Judgment is granted to all Defendants and claims asserted in Count III *except* to the extent that Count III asserts Speiser, Patterson, and Parton failed to intervene to protect Michael from another person's use of excessive force outside of the Hospital.
4. Summary Judgment is granted to all Defendants named in Count IV.
5. Summary Judgment is granted to all Defendants named in Count VI.

And, summary judgment is granted on Jennifer's claim in Count IX to the same extent it is granted on these other claims.

This means that the only claims left for trial are the following claims asserted in the Defendants' personal capacity:

1. Count I, as it relates to Speiser,

2. Count III, to the extent that it asserts Speiser, Patterson, and Parton failed to intervene to protect Michael from another person's use of excessive force outside of the Hospital,

3. Count V, as it relates to Speiser, Patterson, and Parton, and

4. Count IX, to the extent that it is derived from these claims.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: January 29, 2018                UNITED STATES DISTRICT COURT